IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2004

**VINCENT HATCH v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Shelby County**
**No. P-27090     James C. Beasley, Jr., Judge**

---

**No. W2003-02821-CCA-R3-PC  - Filed September 28, 2004**

---

The petitioner, Vincent Hatch, appeals the trial court's denial of his petition for post-conviction relief alleging that he was denied the effective assistance of counsel.  The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ.,  joined.

Kamilah E. Turner, Memphis, Tennessee, for the appellant, Vincent Hatch.

Paul G. Summers, Attorney General & Reporter; Richard H. Dunavant, Assistant Attorney General; and Paul Hagerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On March 2, 2000, the petitioner, who represented himself at trial, was convicted of first degree murder.  A life sentence was imposed. After counsel was appointed on direct appeal, this court affirmed.  See State v. Vincent Hatch, No. W2000-01005-CCA-R3-CD (Tenn. Crim. App., at Jackson, Oct. 19, 2001).  Our supreme court denied application for permission to appeal (Tenn. 2002).

Prior to the trial, the petitioner appeared in court with his appointed counsel, a member of the Shelby County Public Defender's Office, and asked to represent himself at trial.  As the basis of his request, the petitioner expressed the desire to pursue an insanity defense, which his appointed counsel was not willing to do.  The trial judge addressed the petitioner at length and then granted the

request to proceed pro se with an assistant public defender to serve as standby counsel[1] during the trial.

In its opinion affirming the conviction and sentence, the appellate court summarized the pertinent facts as follows:

Ashley Oates testified that in early 1998 she lived in one apartment of a four-apartment unit at 207 Hawthorne in Memphis. Rosmari Pleasure lived in the same apartment complex. Oates knew the [petitioner], Vincent Hatch, as Pleasure's boyfriend.

Just after noon on March 2, 1998, Oates was at home for lunch when she heard a scream. She looked out her kitchen window and saw Pleasure crouched near the back of her apartment building. The [petitioner] was standing over her. Oates thought Pleasure might have fallen or hurt her ankle. Oates opened her door and called out, asking Pleasure if she was all right. Pleasure answered that the [petitioner] had a gun. She asked Oates to call the police. According to Oates, the [petitioner] then spoke in a sarcastic but calm manner and confirmed that she should call the police. Oates then closed her back door.

A few seconds later Oates heard a gunshot. She looked out the window and saw the [petitioner] standing over Pleasure. She also saw the [petitioner] shoot Pleasure a second time, while standing only two or three feet from the victim. Oates immediately dialed 911.

\*　　\*　　\*

Jerry Banks was a friend of the [petitioner]'s . . . . On the afternoon of March 3, 1998, Banks encountered the [petitioner who] . . . told Banks that he had taken Rosmari Pleasure's life. . . . The [petitioner] had in his possession some clothes, a bag, and a weapon. The men drove to Banks' church, and Banks put the gun in the trunk of his car. Banks then drove the [petitioner] to his grandmother's house. The police arrived a few minutes later, Banks told them about the gun, and an officer removed the gun from the trunk of the car. According to Banks, the [petitioner] was upset and crying at the time . . . [but] coherent. He understood that he was in trouble, . . . did not seem to be out of touch with reality . . . [and] did not appear to be intoxicated.

Banks testified that he had never seen the [petitioner] fight, smoke cigarettes, use drugs, or engage in an argument. The [petitioner]'s behavior in this incident

---

[1] In <u>State v. Small</u>, 988 S.W.2d 671, 674 (Tenn. 1999), our supreme court held that the decision whether to appoint advisory counsel to assist a pro se defendant rests entirely within the discretion of the trial court, who should make the determination based "upon the nature and gravity of the charge, the factual and legal complexity of the proceedings, and the intelligence and legal acumen of the defendant."

therefore came as a surprise . . . . He acknowledged that the [petitioner] appeared to have some emotional problems. . . .

Officer Larry Colburn, a crime scene officer with the Memphis Police Department, testified that . . . he recovered a handgun from the trunk of a vehicle. The weapon was fully loaded with six live .38 caliber rounds. He identified the weapon as the same one Jerry Banks had testified belonged to the [petitioner].

\*       \*       \*

The [petitioner] . . . was a full-time student at the University of Memphis, and also attended classes at Shelby State Community College. On [the day of the shooting], he was on his way to class when he stopped to drop off some clothing at Rosmari Pleasure's house. He was carrying a gun because he had been attacked several times in the last six years, the last incident occurring only a few days prior.

The [petitioner] described the victim, Rosmari Pleasure, as someone that he loved very much. However, he also had been experiencing some emotional problems. The [petitioner] testified that as he saw Pleasure he ran toward her with the gun in his hand. . . [and] wanted the victim to listen to him[, claiming] [t]he gun went off accidentally. The [petitioner] testified that he was uncertain how the second shot was fired [and] felt that he may have been hallucinating. The [petitioner] testified that he had no real memory of the incident.

\*       \*       \*

[The petitioner] described Pleasure as an innocent victim, and stated that he was on trial for killing the wrong person. He acknowledged that he was upset because he had been having problems with another woman. He claimed that the other woman had raped him and conceived a child without his consent. Although the [petitioner] was unable to tell the jury exactly what mental problems he suffered, he asserted that he had been receiving counseling for mental and emotional problems since age ten. He also testified about the murder of his prostitute mother; the unpleasant time he spent living with his father, who had a serious cocaine problem and an extensive criminal record; and his suicide attempt in 1992.

After he realized what had happened, the [petitioner] . . . drove around and drank beer. He then drove to his mother's grave and asked her to provide a miracle and bring the victim back to life. When he encountered Mr. Banks the next day, he was on his way back to the cemetery, where he intended to commit suicide.

The [petitioner] spoke at length about the unhappy events in his life. He stated that his academic prowess was unparalleled, but that his emotional problems had caused many troubles.

-3-

[T]he [petitioner] admitted that he murdered Rosmari Pleasure. He also admitted providing a full statement to the police the day after the murder. In the police statement the [petitioner] acknowledged that he and the victim had been having problems and had broken up[, explaining that] [u]pon his arrival at the apartment the [petitioner] began struggling with the victim because he was trying to force her to listen to him and trying to grab her key and go into her apartment. The gun went off. According to the statement, he shot the victim a second time because he was angry and hurt.

The [petitioner] also acknowledged that, on the day after the murder, he had admitted the killing to Jerry Banks. He finally acknowledged that the gun he placed in Jerry Banks' car was the murder weapon. However, he denied that the gun belonged to him, or that he had ever reloaded it. He claimed that he was insane at the time of the offense.

Id., slip op. at 2-4. After deliberation, the jury returned a verdict of guilty of first degree murder. The judge imposed a sentence of life in prison.

On February 7, 2003, the petitioner filed a petition for post conviction relief alleging among other things, that his counsel was ineffective. At the evidentiary hearing, the petitioner complained that appellate counsel failed to interview witnesses after his trial who would have provided details about his mental health if they had been questioned. Petitioner also testified that he had asked his counsel to contact his mother, who was killed in 1973 and had an open-casket funeral, whom he believed was in the Federal Bureau of Investigation's witness protection program.

Petitioner alleged that the trial transcript had been altered because portions were inconsistent with the notes he took at trial. He contended that his counsel, who had not been notified of his suspicions, should have appealed on that basis. The petitioner also complained that his appellate counsel failed to present on appeal issues regarding bench conference participation during the trial and his exclusion from discussions between the prosecution and the trial judge.

While admitting that he had not informed appellate counsel that he was under the influence of medication at the time of trial and that nothing in the record so indicated, he nevertheless contended that the issue should have been presented on appeal. Additionally, the petitioner argued that his counsel failed to challenge the withholding of exculpatory evidence by the state. The petitioner alleged that the mental health facility that examined him submitted falsified information and claimed that he was unable to fully understand the subjects that the doctor discussed.

On cross-examination by the state, the petitioner admitted that he had no knowledge of what was said during the trial recess where he accused the prosecution of conspiring with the trial judge. The petitioner also testified that he had the opportunity to question the findings and opinions of the clinical psychologist with the Middle Tennessee Mental Health Institute who had determined him to be competent.

-4-

The petitioner's appellate counsel explained that he had not interviewed character witnesses at the time of appeal because the appeal must be prepared directly from the record. He testified that he had communicated with the petitioner on several occasions by mail and that, in his opinion, a meeting in person was not necessary. It was his belief that the trial transcript had not been altered. Counsel stated that the strongest issue on appeal involved the right to assistance of counsel. It was his argument that the petitioner was not adequately prepared to proceed to trial and that the trial judge had failed to thoroughly question the petitioner as to his background and experience.

The post-conviction court denied relief, concluding that "[appellate counsel] raised the proper issues, argued the proper issues, briefed the proper issues," and that "this Court, based upon the testimony it has heard, doesn't see that any of the things requested by [the petitioner] would have made a difference in the appeal of this case." The post conviction court concluded that "[appellate counsel] was not ineffective in representation of [the petitioner] on appeal and that the [petitioner] has not carried his burden of proof for purposes of a post conviction."

In this appeal, the petitioner claims that his appellate counsel was deficient by failing to thoroughly argue the issue of his capacity to knowingly and intelligently waive his right to the assistance of counsel. Specifically, the petitioner asserts that counsel was ineffective by failing to pursue additional information related to his history of mental illness. The petitioner also claims that counsel was deficient for not meeting with the petitioner in person during the appellate process.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).[2] Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936

---

[2]In 2003, the Post-Conviction Procedure Act was renumbered within the Code. It now appears at sections 40-30-101 through 40-30-122.

(Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the petitioner has failed to present any evidence of prejudice by appellate counsel's failure to interview other witnesses. Counsel would not have been able to add information gained by the witnesses to the record. See Tenn. R. App. P. 28(a); State v. Matthews, 805 S.W.2d 776, 783 (Tenn. Crim. App. 1990). Moreover, the petitioner failed to produce these witnesses at the evidentiary hearing as a means of demonstrating how their testimony could have affected the results of the appeal.

Finally, petitioner is not entitled to relief on the grounds that counsel was deficient by failing to more thoroughly argue his lack of ability to give a knowing and intelligent waiver of his right to assistance of counsel. Under the Post-Conviction Procedure Act, a claim which has been previously determined cannot be a basis for post-conviction relief. See Tenn. Code Ann. § 40-30-206(h) (1997) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing.").

In the opinion on direct appeal of the conviction, this court specifically addressed the issue of whether the waiver of the right to assistance of counsel was intelligent and knowing:

> The record in this case establishes that the trial judge followed the requirements of Herrod, asking substantially all the questions originally outlined in McDowell. The colloquy was extensive. The court warned the appellant that self representation was unwise, that he would be held to the same standards as an attorney trained in the law, and that he was not well served in representing himself. The only

matter omitted from the colloquy was a discussion of possible lesser included offenses.

> The trial judge concluded by granting appellant's request to designate former appointed counsel as standby counsel. Counsel had already announced to the court that she was ready for trial. We find that appellant's waiver of counsel was knowingly and intelligently made. This issue is without merit.

Hatch, slip op. at 6-7.  In our view, this qualifies as a ruling on the merits.

Accordingly, the judgment is affirmed.


                                                 _____

                                                 GARY R. WADE, PRESIDING JUDGE